UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NAGENDRA KUMAR NAKKA, NITHEESHA NAKKA, SRINIVAS THODUPUNURI, RAVI VATHSAL THODUPUNURI, GIRIJESH THODUPUNURI, RAJESHWAR ADDAGATLA, VISHAL ADDAGATLA, SATYA VENU BATTULA, SANDEEP BATTULA, SIVA PEDDADA, PAVANI PEDDADA, VENKATA PEDDADA, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and U.S. DEPARTMENT OF STATE,<br><br>Defendants. | Case No. 3:19-cv-2099<br><br>CLASS ACTION ALLEGATION COMPLAINT |

Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      This action, brought by and on behalf of immigrant children and their parents, seeks to ensure that provisions of the Child Status Protection Act ("CSPA") are applied equally to children regardless of the national origin of their parents, absent a legitimate government

interest in disparate treatment. CSPA was enacted in 2002 to prevent minor children from "aging out" when they reach 21 years of age and losing eligibility to immigrate together with their parents. Presently, however, children whose parents are born in India are not protected from aging out due to the application of per country limitations and national origin-based visa bulletin charts which result in decades long waits, while children with other national origins remain protected. This disparate treatment of similarly situated children, purely on account of national origin, is unjust and violates the Equal Protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution.

2. Two years prior to the enactment of CSPA, Congress enacted the American Competitiveness in the Twenty First Century Act of 2000, which permits H-1B workers and their H-4 dependents to remain indefinitely in valid H-1B and H-4 status if their wait for lawful permanent resident status is extended due to the application of per country limitations on immigrant visas. This special treatment has permitted children who are brought to the United States by their parents at a young age, often prior to compulsory education, to remain legally in H-4 status, grow up in the United States with their parents and attend public school for the entirety of their K-12 education, and in many cases most or all of their college years.

3. When such children turn 21, however, they are denied further H-4 extensions despite their parents receiving H-1B and H-4 extensions indefinitely, purely due to their parent's national origin and even though they may still be considered children under CSPA for purposes of their immigration eligibility. Further, these children suffer revocation of their derivative beneficiary immigrant status once their CSPA modified age passes the 21-year-old mark, and they are stripped of their priority date and place in line. They are entirely separated legally from any benefits that they enjoyed together with their family as patient and lawful immigrants. This is unjust treatment, where similarly situated children whose parents have a different national origin may have their age frozen concurrently with the filing of a petition or during the child's minority.

## JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). This Court has remedial authority under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

## VENUE

5.      Venue in this district and division is proper under 28 U.S.C. § 1391(e)(1)(C) because no real property is involved in the action and the residence of plaintiffs Srinivas Thodupunuri, Ravi Vathsal Thodupunuri and Girijesh Thodupunuri is Beaverton, Oregon, in the county of Washington.

## PARTIES

6.      Plaintiff Nagendra Kumar Nakka was born in India and was sponsored by his employer for an H-1B work visa. He brought his minor daughter Nitheesha Nakka to the United States when Nitheesha was 4 years old. Mr. Nakka was sponsored for permanent resident status by his employer in the EB-2 category on February 1, 2011. He has been the recipient of H-1B extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). He is a resident of Norwich, Connecticut.

7.      Plaintiff Nitheesha Nakka was born in 1994 in India. She came to the United States at age 4 as an H-4 dependent of her father Nagendra Kumar Nakka. She has lived in the United States all her life since that time. She has been the recipient of H-4 extensions beyond the 6-year maximum due to her favored status under AC21 § 104(c). Subtracting from her age the length of time that her father's petition was pending from her age she exceeded 21 years of age under Defendants' CSPA calculation in April 2015. Using the Worldwide Employment chart from February 2011, her age would be considered frozen at age 16 at that time and remain under 21, but using the national origin-based India chart, she aged out before her father's priority date became current. When Nitheesha was in high school and planning for college, she was barred from applying to internships, research programs and scholarships due to her visa status, causing herself and her family hardship, both financial and mental. These problems persisted throughout

college and graduate school. She finished undergraduate with a major in Economics and earned four job offers at very good companies, but all four rescinded their offers after learning she needed visa sponsorship for a work visa. She fears separation from her family. She is a resident of Long Island, New York.

8. Plaintiff Srinivas Thodupunuri was born in India and was sponsored by his employer for an H-1B work visa. He brought his minor sons, Girijesh Thodupunuri and Ravi Vathsal Thodupunuri, to the United States when Girijesh was 7 years old and Ravi was 11. He was sponsored for permanent resident status by his employer in the EB-2 category on March 4, 2011. He has been the recipient of H-1B extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c).  He is a resident of Beaverton, Oregon where he has lived since 2010.

9. Plaintiff Ravi Vathsal Thodupunuri was born in 1997 in India. He came to the United States at age 11 as an H-4 dependent of his father Srinivas Thodupunuri, starting seventh grade at Stoller Middle School in Oregon. He graduated from Westview High School in Oregon and went on to Portland State University to earn a bachelor's degree in biology. He has been the recipient of H-4 extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). Subtracting from his age the length of time that his petition was pending from his age he exceeded 21 years of age under Defendants' CSPA calculation in June 2018. Using the Worldwide Employment chart from March 2011, his age would be considered frozen at age 14 and still under 21, but using the national origin-based India chart, he aged out before his father's priority date became current. He is a resident of Beaverton, Oregon.

10. Plaintiff Girijesh Thodupunuri was born in 2001 in India. He came to the United States at age 7 as an H-4 dependent of his father Srinivas Thodupunuri, beginning third grade at Findley Elementary School in Oregon, then graduating from Westview High School. He is now studying at Portland State University. He has been the recipient of H-4 extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). Subtracting from his age the

length of time that his petition was pending from his age he will exceed 21 years of age under Defendants' CSPA calculation in March 2022. Using the Worldwide Employment chart from March 2011, his age would be considered frozen at age 10 and still under 21, but using the national origin-based India chart, he will age out before his father's priority date comes current. It is not within the realm of possibility that EB-2 India cut-off dates will advance to March 4, 2011 before he is considered to have aged out. He is a resident of Beaverton, Oregon.

11. Plaintiff Rajeshwar Addagatla was born in India and was sponsored by his employer for an H-1B work visa. He brought his minor son Vishal Addagatla to the United States when his son was 8 years old. He was sponsored for permanent resident status by his employer in the EB-2 category on December 16, 2011. He has been the recipient of H-1B extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). He is a resident of Aurora, Illinois.

12. Plaintiff Vishal Addagatla was born in 1998 in India. He came to the United States at age 8 as an H-4 dependent of his father Rajeshwar Addagatla. He has been the recipient of H-4 extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). He is now over 21 years of age and was forced to change from H-4 to F-1 student status to remain lawfully in the United States, to attend Illinois Institute of Technology. Subtracting from his age the length of time that his father's petition was pending from his age he will exceed 21 years of age under Defendants' CSPA calculation in August 2020. Using the Worldwide Employment chart from December 2011, his age would be considered frozen at under 21 but using the national origin-based India chart, he will age out before his father's priority date comes current. It is not within the realm of possibility that EB-2 India cut-off dates will advance to December 16, 2011 before he is considered to have aged out. He is a resident of Aurora, Illinois.

13. Plaintiff Venkata Satya Venu Battula was born in India and was sponsored by his employer for an H-1B work visa. He brought his minor son Sandeep Battula to the United States in 2003 when his son was 6 years old, and his minor daughter when she was 3 years old. He was

sponsored for permanent resident status by his employer in the EB-3 category on May 9, 2008. Mr. Battula has been the recipient of H-1B extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). He was granted lawful permanent resident status in February 2019, along with his wife and his 19-year-old daughter, but his son Sandeep was considered aged out under CSPA due to the national origin-based chart. Venkata Satya Venu Battula filed an I-130 immigrant petition in 2019 for his son Sandeep Battula in the F2B category, but his place in line was not preserved and it will be many more years before his son can gain permanent resident status through this petition. Plaintiff Venkata Satya Venu Battula is a resident of Lewis Center, Ohio.

14. Plaintiff Sandeep Battula was born in 1996 in India. He came to the United States in 2003 at age 6 as an H-4 dependent of his father Venkata Satya Venu Battula. He has completed all his elementary, middle school, high school, university and master's programs in the United States. He has been the recipient of H-4 extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). Subtracting the length of time that his petition was pending (190 days) from his age he exceeded 21 years of age under Defendants' CSPA calculation on May 29, 2018. For the month of May 2018, the cut-off date for the national origin-based India chart for EB-3 was May 1, 2008, which was only 8 days away from the May 9, 2008 priority date of his father's I-140 petition. Because his father's priority date was 8 days later than the cut-off, he could not file for adjustment of status in May 2018 after waiting a decade. As of July 2018, just two months later, the EB-3 India cut-off date at long last moved forward to November 1, 2008, allowing Sandeep's father, mother, and younger sister to file for adjustment of status to lawful permanent resident, but because Sandeep was just 8 days away from eligibility and had aged out he was prevented from immigrating together with his family despite coming at age 6 and waiting in line all those years. Using the Worldwide Employment chart from June 2013, his father's priority date of May 9, 2008 was earlier than the worldwide cut-off date of September 1, 2008, and at age 16 his age would have been considered frozen at under 21. But

since USCIS and DOS use the national origin-based India chart, he is considered to have aged out just two months before his father's priority date became current. His father and mother filed family F2B petitions for him in March and April 2019, but since he has lost his place in line, he has been forced to get in the back of a long line with many years before he can be eligible under the 2B category. Instead of having a place in line from 2008, his place in line has now moved to 2019, and his wait begins again. If he marries before he immigrates under this petition, he loses his status as well. He is a resident of Lewis Center, Ohio, and is undertaking student Optional Practical Training in Bentonville, Arkansas.

15.     Siva Peddada was born in India and was sponsored by his employer for an H-1B work visa. He brought his minor daughter Pavani Peddada at age 6 and minor son Venkata Peddada at age 11 to the United States in H-4 status. He was sponsored for permanent resident status by his employer in the EB-2 category on December 7, 2010. He has been the recipient of H-1B extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). He is a resident of Chester Springs, Pennsylvania.

16.     Plaintiff Pavani Peddada was born in 1999 in India. She came to the United States at age 6 as an H-4 dependent of her father Siva Peddada. She has been the recipient of H-4 extensions beyond the 6-year maximum due to her favored status under AC21 § 104(c). Subtracting the length of time that her father's petition was pending from her age she will exceed 21 years of age under Defendants' CSPA calculation in October 2020. Using the Worldwide Employment chart from December 2010, her age would be considered frozen at age 11 and still under 21 but using the national origin-based India chart, she will age out before her father's priority date comes current. It is not within the realm of possibility that EB-2 India cut-off dates will advance to December 6, 2010 before she is considered to have aged out. She is currently completing her undergraduate studies at the University of Delaware in Newark, Delaware where she is resident, and where she faces many challenges with the renewal of her driver's license due to her status.

17.     Plaintiff Venkata Peddada was born in 1996 in India. He came to the United States at age 11 as an H-4 dependent of his father Siva Peddada. He has been the recipient of H-4 extensions beyond the 6-year maximum due to his favored status under AC21 § 104(c). Subtracting the length of time that his father's petition was pending from his age he exceeded 21 years of age under Defendants' CSPA calculation in March 2017. Using the Worldwide Employment chart from December 2010, his age would be considered frozen at age 14 and still under 21, but using the national origin-based India chart, he aged out before his father's priority date became current. He is currently a medical student at Kansas City University in Joplin, Missouri, where he is resident. Despite attending the University of Pittsburgh for his undergraduate studies, he did not receive any financial benefits due to his status and was required to pay international student tuition even though he had been a resident of Pennsylvania for over seven years. He is facing many challenges with the renewal of his driver's license in Missouri due to his status.

18.     Defendant U.S. Citizenship and Immigration Services is the official government agency responsible for the adjudication of benefits, including granting of lawful permanent resident status through adjustment of status, under the Immigration and Naturalization Act.

19.     Defendant U.S. Department of State is the official government agency responsible for the adjudication and issuance of immigrant visas, for the purpose of granting lawful permanent resident status.

## STATUTORY BACKGROUND

20.     Under the Immigration and Nationality Act, employers may sponsor an employee to become a lawful permanent resident (LPR) by filing a petition for the employee pursuant to 8 U.S.C. § 1154(a)(1)(E) or (F), if the position offered and the employee qualify under one of the preference categories defined in 8 U.S.C. § 1153(b)(1)(A) (Aliens with extraordinary ability), 8 U.S.C. § 1153(b)(1)(B) (Outstanding professors and researchers), 8 U.S.C. § 1153(b)(1)(C) (Certain multinational executives and managers), 8 U.S.C. § 1153(b)(2) (Advance degree

professionals and aliens of exceptional ability), 8 U.S.C. § 1153(b)(3) (Skilled workers, Professionals, and other workers). These categories are described as employment based 1st, 2nd, and 3rd preferences, or EB1, EB2, and EB3 respectively.

21.    The employee thus sponsored (through the filing of a petition) is referred to as the "principal beneficiary" of the petition, and pursuant to 8 U.S.C. § 1153(d), the principal beneficiary's spouse and children are each entitled to "derivative beneficiary" status. This entitles them to the same status and same order of consideration as the principal. 8 U.S.C. § 1153(d)

22.    The definition of a child, as used in Titles I and II (relevant to the claims herein), is found at 8 U.S.C. § 1101(b)(1) and includes an unmarried person under 21 years of age, but is modified to be older than a person's biological age by operation of a specific calculation under the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (Aug. 6, 2002).

23.    The INA establishes a worldwide limitation on the number of immigrant visas, and thus LPR status, Defendant agencies may collectively bestow upon principal and derivative beneficiaries in a given fiscal year, which amounts to 140,000 pursuant to 8 U.S.C. § 1151(d), plus any unused family quota visas from the prior fiscal year.

24.    Within the overall quota scheme, the INA establishes numerical limitations on immigrant visas which may be issued to natives of any single foreign state, establishing a seven percent (7%) limit. 8 U.S.C. § 1152(a)(2).

25.    The INA states that except as specifically provided in 8 U.S.C. § 1152(a)(2) (the per country limit), and a section dealing with special immigrants, as well as provisions for immediate relatives, classes which are exempt from numerical limitations, that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."

26.    The establishment of annual quotas on the number of family based and employment-based immigrants has resulted in the establishment of wait lists, controlled by

charts of cut-off dates referencing the filing date of immigrant petitions. The list is organized by the Department of State and published monthly as the "Visa Bulletin." An immigrant who is sponsored, whether by a family member or by an employer, is provided with a "priority date" which represents the date that the petition was filed with the agency, or in the case of EB2 and EB3 categories, the date that a labor certification application was previously filed with the Department of Labor.

27. If the priority date of a petition is earlier than the cut-off date listed in the Visa Bulletin for a given month, then USCIS and the State Department consider that an immigrant visa has become available for that petition. This may trigger the ability to apply for, and receive, an immigrant visa whether through issuance of an immigrant visa through the State Department at an Embassy abroad, or through adjustment of status from within the United States under 8 U.S.C. § 1255(a) through USCIS.

28. Historically, the State Department issued the monthly Visa Bulletin with one chart for employment-based immigrants and another chart for family-based immigrants. Effective October 2015, however, the State Department began establishing two different Visa Bulletin charts for each of the two groups (four charts in total, instead of two), one labeled "Dates for Filing Applications" and another labeled "Final Action Dates". Despite the implication of the Dates for Filing chart, USCIS does not always consider those dates as permitting the filing of an application for adjustment of status to LPR status, instead determining whether to use one or the other chart on a month-by-month basis. The Final Action Date chart represents priority dates which are amenable to issuance of an immigrant visa immediately. Where the Visa Bulletin indicates that a category is "Current" (also notated with a "C"), this represents a visa availability for any and all priority dates (currently available for any priority date).

29. The imposition of per country limitations in 8 U.S.C. § 1152(b) has resulted in cut-off dates which differ depending on the place of birth of the principal beneficiary. This is reflected in the Visa Bulletin charts in a per country cut-off date if any country has reached its

per country maximum.

30.     Being a principal beneficiary of an immigrant petition filed on one's behalf does not provide work authorization or the ability to remain in the United States on the basis of the immigrant petition approval alone, absent an application for adjustment of status. The H-1B nonimmigrant work visa category, and the H-4 dependent category for spouses and children, is utilized for this purpose and is subject to a 6-year maximum on the period of stay. See 8 U.S.C. § 1184(g)(4). The per country limitations, however, result in a wait for a visa number exceeding the default 6 year maximum under an H-1B work visa to remain in the country, for some countries, notably India.

31.     Effective October 17, 2000, The American Competitiveness in the Twenty First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1253, Title I, § 104(c) ("AC21 § 104(c)") provided special protections for beneficiaries of petitions subject to per country limitations, in a conforming amendment that is now Note 5 to 8 U.S.C. § 1184, which permits the beneficiary of an EB1, EB2, or EB3 petition (8 U.S.C. § 1153(b)(1), (2), and (3)) to exceed the 6 year maximum in H-1B or H-4 status if the beneficiary is "eligible to be granted that status but for application of the per country limitations applicable to immigrants under those paragraphs" and permits indefinite 3 year extensions of H-1B and H-4 status "until the alien's application for adjustment of status has been processed and a decision made thereon."

32.     Less than two years later during the next Congress, the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927, (hereafter "CSPA") was enacted on August 6, 2002, to establish protections for children who may cease to be considered derivative beneficiaries for purposes of obtaining LPR status due to becoming 21 years of age or older, since the general definition of a child includes those under 21 years of age. When a derivative beneficiary ceases to be considered a child under the statutes, this is called "aging out."

33.     CSPA included a provision, found at 8 U.S.C. § 1153(h), which seeks to prevent children from aging out in certain circumstances, allowing the age of the child to be reduced by

the number of days that the immigrant petition remained pending with USCIS (to account for bureaucratic delays), but also allowing the age of the child to be frozen at the point when an immigrant visa number becomes available, effectively deeming them under 21 years of age even though their biological age has surpassed age 21. In order to continue to qualify for this age freezing, there is a condition antecedent that the child must also seek to acquire LPR status within 1 year of availability.

34. At the time CSPA was enacted there was no difference in the Visa Bulletin chart between the employment based cut off dates established for those beneficiaries born in India and those born in any other country because all the dates were "Current." In other words, everyone's wait times were exactly equal at the time CSPA's enactment in 2002.

35. Since CSPA's enactment, wait times for certain nationalities, notably India and China, have steadily increased. The December 2019 Visa bulletins indicate Dates for Filing of July 1, 2009 for EB-2 India, and February 1, 2010 for EB-3 India, and indicate Final Action Dates of May 15, 2009 for EB-2 India and January 1, 2009 for EB-3 India. The date movement of these charts is such that EB-2 India has barely moved in the past 8 years. For example, in January 2012 the EB-2 India cut off date was January 1, 2009.

36. A plurality of the Supreme Court has ruled that while the CSPA statute could have been interpreted by the agency in a broad fashion allowing an aged out child to keep their place in line for a later filed petition initiated by the child's parent, that the statute was ambiguous and the agency's narrow interpretation entitled to *Chevron* deference. *Scialabba v. Cuellar De Osorio*, 134 S. Ct. 2191 (2014). Thus, after a child has waited for many years to be eligible to immigrate based on their derivative status, once they are considered to have "aged out" they lose not only their eligibility to immigrate with the parent, but also their place in line as well. Once a parent files for the child's immigrant status after becoming a permanent resident, a new multiyear wait begins.

37. After the implementation in 2015 of the two chart visa bulletin, USCIS has

decided to use the "Final Action Dates" chart for purposes of calculating a person's age under CSPA, while at select times during the year (including the current month) allowing the use of the "Dates for Filing" chart for purposes of filing an Application to Register Permanent Residence or Adjustment of Status. Because the Dates for Filing chart typically has dates later in time than the Final Action Dates chart (because the Dates for Filing chart represents cut-off dates anticipated to result in visa availability within one year) this has resulted in the anomalous situation in which children who file for adjustment of status (Form I-485, with fee) based on the Dates for Filing chart later are deemed no longer eligible when their CSPA calculated age based on the per country chart exceeds 21 years old based on the Final Action Date chart. This in effect invites the child to apply for adjustment of status, paying all necessary filing fees and supplying necessary forms and supporting documentation for a green card, being issued a work and travel permit, only to face denial when the other chart shows they aren't a child under the CSPA calculation anymore. This is an irrational result.

## FACTUAL BACKGROUND

38.     Defendants have determined as a policy that CSPA age be calculated by subtracting the number of days the petition was pending from the applicant's age on the date an immigrant visa becomes available to the applicant relying upon national origin-based Final Action Date charts for nationals of countries who are "oversubscribed".

39.     Defendants rely upon the Worldwide Employment Final Action Dates for all other countries, using a more favorable date to lock in or "freeze" a child's age for CSPA age determination purposes.

40.     This unequal treatment results in protection from aging out and losing eligibility as a derivative for all other countries, and lack of protection for oversubscribed countries, such that children of Indian born immigrants no longer have any realistic chance to remain children for purposes of derivative eligibility.

41.     Defendants regularly grant H-1B and H-4 extensions for individuals from

oversubscribed countries such as India beyond the 6 year maximum pursuant to AC21 § 104(c), permitting H-4 dependent children of Indian born parents to enter the country often at a young age and reside in the U.S. in H-4 status for many years, resulting in those H-4 dependent children growing up often their entire lives in the United States.

42. Other immigrants are subject to nonimmigrant stay limitations which cannot be exceeded, such as the L-1 category which limits entry to 5 years for specialized knowledge workers and 7 years for managers and executives. Additionally, other immigrants who do not qualify for nonimmigrant work visas at all, but who qualify for immigrant status under EB-2 or EB-3, must wait abroad before they can obtain lawful permanent resident status. Children of parents of these less favored nonimmigrant categories are nonetheless given more protection under CSPA than Plaintiffs.

43. Plaintiffs are long term lawful residents whose eligibility to immigrate together with their families, and even remain in the United States after establishing a lengthy residence, are put in jeopardy by the unequal CSPA age determinations based solely on national origin of the parent of the child.

## CLASS ACTION ALLEGATIONS

44. The named Plaintiffs bring this action pursuant to Fed R. Civ. P. 23 on behalf of themselves and all other persons similarly situated. The named plaintiffs seek to represent: All derivative child beneficiaries (and their principal beneficiary parent) of employment-based immigrant petitions (Form I-140) filed for preference status under paragraphs (1), (2), or (3) of 8 U.S.C. § 1153(b) who enjoy special treatment in extending H-1B and H-4 status beyond the 6 year maximum pursuant to AC21 § 104(c), and who are excluded from treatment as children under 8 U.S.C. § 1153(h) solely because of their principal beneficiary parents' national origin due to Defendants' use of the national origin-based Visa Bulletin chart instead of the Worldwide Employment Visa Bulletin chart for CSPA age determination.

45. The members of Plaintiffs' class warrant class action treatment because they

fulfill the requirements under Rule 23(a).

46. The proposed class is so numerous that joinder of all members is impracticable. Due to the special protections accorded beneficiaries of immigrant petitions subject to per country limitations which permit such beneficiaries to exceed the 6 year limitation on H-1B and H-4 status, numerous derivative beneficiary children have lived most of their lives in lawful status in the United States, and due to the unavailability of visa numbers due to per country limits, thousands of children have aged out due to unequal treatment under 8 U.S.C. § 1153(h). Thousands more are at severe risk of aging out before their priority date becomes current. Fed. R. Civ. P. 23(a)(1).

47. There are questions of law or fact common to the class. All the derivative beneficiary plaintiffs and class members were minors under the age of 21 years when immigrant petitions were filed on behalf of their principal immigrant parent(s) and would have been considered children and eligible for immigration as the derivative beneficiary of the petition, but for the national origin of each plaintiffs' and class members' principal immigrant parent(s). Fed. R. Civ. P. 23(a)(2).

48. The claims and defenses of the representative plaintiffs are typical of the claims and defenses of the class. The representative plaintiffs' cases do not differ in any material way from the class members, as each was the principal or derivative beneficiary of a petition filed by an employer on behalf of the principal beneficiary parent, and each was subject to unequal treatment under 8 U.S.C. § 1153(h) due to the national origin of the principal beneficiary parent(s). Fed R. Civ. P. 23(a)(3)

49. The representative plaintiffs will fairly and adequately protect the interests of the class, because the plaintiffs have either aged out or will soon age out of eligibility because of the unequal treatment under 8 U.S.C. § 1153(h), which is exactly the situation in which all class members find themselves. Fed R. Civ. P. 23(a)(4)

50. This action is maintainable as a class action pursuant to Fed R. Civ. P. 23(b)(1)

because varying adjudication resulting in inconsistent processing immigrant visas from state to state or region to region would prove to be unworkable in a federal immigration system designed to be uniform.

51. The action is likewise maintainable under Fed R. Civ. P. 23(b)(2) because the United States has acted or refused to act on grounds generally applicable to the class, utilizing the same unequal calculations of age based on national origin.

52. Plaintiff's counsel, Brent Renison, is an appropriate class counsel for the proposed class. Renison has undertaken work identifying and investigating potential claims in the action, has experience handling three previous class actions involving immigrant rights issues, and possesses other immigration-related litigation experience. With 22 years of corporate immigration law and litigation practice, he is also considered one of the world's leading corporate immigration lawyers, as attested by his inclusion in Who's Who Legal, Best Lawyers in America, and Chambers and Partners. Fed. R. Civ. P. 23(g).

## CLAIM FOR RELIEF

Fifth Amendment – Equal Protection

53. Plaintiffs re-allege and incorporate by reference the preceding allegations in this Complaint as if fully set forth herein.

54. The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from denying persons the equal protection of the laws.

55. Defendants' use of the national origin-based Visa Bulletin chart to determine Plaintiffs' age for CSPA purposes stands in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution.

56. Defendants' use of the national origin-based Visa Bulletin chart to determine Plaintiffs' age for CSPA purposes lacks a rational basis and cannot be justified by a legitimate government interest.

57. The INA states that except as specifically provided in 8 U.S.C. § 1152(a)(2) (the

per country limit), and a section dealing with special immigrants, as well as provisions for immediate relatives (classes which are exempt from numerical limitations), that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."

58. The per country limit found at 8 U.S.C. § 1152(a)(2) establishes annual fiscal year numerical limitations on immigrant visas which may be issued to natives of any single foreign state, establishing a seven percent (7%) limit. The per country limits apply to all countries, without specifying any particular nationality.

59. Congress enacted the American Competitiveness in the Twenty First Century Act of 2000, which permits H-1B workers and their H-4 dependents to remain indefinitely in valid H-1B and H-4 status if their wait for lawful permanent resident status is extended due to the application of per country limitations on immigrant visas. This special treatment sanctioned by Congress has permitted children who are brought to the United States by their parents at a young age, often prior to compulsory education, to remain legally in H-4 status, grow up in the United States with their parents and attend public school for the entirety of their K-12 education, and in many cases most or all of their college years.

60. Plaintiffs are similarly situated to nationals of all other countries in that all other countries are subject to per country limits equally, and the per country limits serve to apportion immigrant visas in a fashion that ensures immigrant visa availability in a given fiscal year to all nationalities. Defendants' use of the national origin-based Visa Bulletin charts is permissible to serve this limited legitimate government interest.

61. Defendants use of the national origin-based Visa Bulletin chart, however, to deny children protection under the Child Status Protection Act, including denying their status as derivative beneficiaries of their principal beneficiary parent and denying them retention of their place in line established many years earlier, considering Plaintiffs enjoy special status under the AC21 provision § 104(c) (Note 5 to 8 U.S.C. § 1184) permitting extension of H-4 nonimmigrant

status until Plaintiffs' application for adjustment of status has been processed and a decision made thereon, does not serve a legitimate government interest and stands in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution.

62.     Defendants use of the national-origin based Visa Bulletin chart results in a wholly irrational result, where immigrants who have never been to the United States before or who have work visa classifications with less favorable periods of stay than Plaintiffs can lock in the age of children who are 19 or 20 years old at the time of petition filing, while Plaintiffs' ages are not locked in under Defendants determinations even though they have lived in the United States most of their lives pursuant to special provisions of AC21 § 104(c) and even though a petition was filed for the principal beneficiary parent at a tender age. The legitimate purpose of ensuring visa availability for immigrants from all national origins is not rationally related to the result here which forecloses immigration to children solely based on national origin. It is wholly irrational to treat H-4 nonimmigrant children who are eligible for indefinite extension under AC21 § 104(c) and spend most of their lives in the United States less favorably (drastically) than children who have never even been to the United States before, or who have dependent nonimmigrant visa classifications with periods of stay less favorable than Plaintiffs, purely due to the fortuitous circumstance of their parents' birth in a country which at a given time happens not to be oversubscribed due to per country limits.

63.     No legitimate purpose can be served by giving less consideration to Plaintiffs whose ties with this country are longstanding and sanctioned by special provisions enacted by Congress to permit their long residence, than to those who have never even touched foot on United States soil.

64.     Defendants' use of Plaintiffs' biological age to determine H-4 extension eligibility, thereby foreclosing H-4 extensions beyond Plaintiffs' 21st birthday, entirely fails to consider Plaintiffs' special status under the AC21 provision § 104(c) (Note 5 to 8 U.S.C. § 1184)

permitting extension of H-4 nonimmigrant status until Plaintiffs' application for adjustment of status has been processed and a decision made thereon, and stands in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution because similarly situated children are permitted to remain in status until their applications for adjustment of status have been processed and separating these long-term residents from their families based on national origin lacks a rational basis and cannot be justified by a legitimate government interest.

65.  Defendants' discrimination described in the foregoing paragraphs based on national origin is not narrowly tailored to advance any important or compelling government interest.

66.  As a result of Defendants' interpretation of 8 U.S.C. § 1153(h), Plaintiffs and class members have suffered injuries including permanent loss of eligibility for immigration benefits, loss of their place in line, and loss of the ability to remain together with their families while they seek to immigrate and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the unjust interpretation is not declared unconstitutional an enjoined.

67.  Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assume jurisdiction over this action;
2. At the earliest practicable time, certify this action as a class action and appoint class counsel;
3. Declare that Defendants' interpretation of CSPA is unconstitutional and in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution;
4. Enjoin Defendants from utilizing the national origin-based Visa Bulletin dates to

calculate Plaintiffs' age for CSPA age determination;

5. Order Defendants to utilize the Worldwide Visa Bulletin dates for CSPA age determination purposes;

6. Enjoin Defendants from utilizing Plaintiffs' biological age to determine H-4 extension eligibility;

7. Order defendants to utilize Plaintiffs' CSPA age determination due to their special status under the AC21 § 104(c) (Note 5 to 8 U.S.C. § 1184) permitting extension of H-4 nonimmigrant status until Plaintiffs' applications for adjustment of status have been processed and a decision made thereon;

8. Order defendants to place Plaintiffs in the same position as other similarly situated H-4 nonimmigrant children who obtain an Employment Authorization Document (EAD) in connection with their adjustment of status applications, and Order Defendants to deem Plaintiffs eligible for EAD issuance until their applications for adjustment of status have been processed and a decision made thereon;

9. Award plaintiff reasonable costs and attorney's fees under the Equal Access to Justice Act following separate motion after final disposition; and

10. Award such further relief as the Court deems necessary or proper.

DATED this 27th day of December 2019.

By  /s/ Brent W. Renison
BRENT W. RENISON
PARRILLI RENISON LLC
610 SW Broadway Suite 505
Portland, OR 97205
Phone: (503) 597-7190
brent@entrylaw.com
OSB No. 96475
Lead counsel